# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JAIME NAVARRO,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Case No. CV 16-05645-JEM

MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

## PROCEEDINGS

On July 28, 2016, Jaime Navarro ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on December 1, 2016. On August 17, 2017, the parties filed a Revised Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

**BACKGROUND**

Plaintiff Jaime Navarro is a 57 year-old male who applied for Social Security Disability Insurance benefits on October 7, 2009, alleging disability beginning October 24, 2002.[1] (AR 17.) The ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of November 24, 2002, through his date last insured of June 30, 2008. (AR 19.)

Plaintiff's claim was denied initially and on reconsideration on June 11, 2010. (AR 17.) On June 11, 2010, Plaintiff filed a timely request for hearing. (AR 17.) On April 11, 2012, following a hearing, the Administrative Law Judge ("ALJ") Dennis T. Bennett found that Plaintiff met the regulatory definition of disabled. (AR 17, 165-172.) On own motion review, the Appeals Council reversed and remanded the matter for further proceedings, identifying two reversible errors. (AR 17, 174-177.) Pursuant to the remand order, ALJ John D. Moreen convened a supplemental hearing on October 1, 2014, in Pasadena, California. (AR 17.) Plaintiff appeared and testified at the hearing and was represented by counsel. (AR 17.) Medical expert ("ME") Bryce D. Breitenstein, M.D., and vocational expert ("VE") Jane Haile also appeared and testified at the hearing. (AR 17.)

The ALJ issued an unfavorable decision on December 22, 2014. (AR 17-25.) The Appeals Council denied review on June 2, 2016. (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ followed the explicit instructions of the Appeals Council regarding the application of the special technique set forth in 20 C.F.R. § 404.1520a.

2. Whether the ALJ properly evaluated all the relevant medical evidence from Plaintiff's treating physicians.

---

[1] This is an error. The actual onset date is November 24, 2002. (AR 19, 165, 330, etc.)

3. Whether the ALJ properly evaluated the disability determinations made by Plaintiff's treating physicians.

4. Whether the ALJ erred in finding that Plaintiff did not have a medically determinable impairment that is "severe" or a combination of impairments that is severe.

5. Whether the ALJ's statements regarding Plaintiff's credibility were supported by the record.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

# THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four,

consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of November 24, 2002, through his date last insured of June 30, 2008. (AR 19.)

At step two, the ALJ determined that through his date last insured Plaintiff had the following medically determinable severe impairments: left carpal tunnel syndrome, status post release, right carpal tunnel syndrome, left cubital tunnel syndrome, status post ulnar nerve release and release revision, right cubital tunnel syndrome, left shoulder impingement, status post labrectomy, acromioplasty and synovectomy, disc protrusions at C3-7. (AR 19-20.)

At step three, the ALJ determined that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 20.)

The ALJ then found that through his date last insured Plaintiff had retained the RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, standing and walking for 6 hours in an 8-hour workday, sitting for 6 hours. Plaintiff had no other significant limitations except he needed to avoid all above the shoulder activity with the left upper extremity.(AR 20-24.) In determining the above RFC, the ALJ made a determination that Plaintiff's subjective symptom allegations were "not entirely credible." (AR 24.)

At step four, the ALJ found that through his date last insured Plaintiff was able to perform his past relevant work as a diffusion operator and a semiconductor assembler. (AR 25.)

Consequently, the ALJ found that Claimant was not under a disability, as defined in the Social Security Act, at any time from November 24, 2002, his alleged onset date, through June 30, 2008, his date last insured. (AR 25.)

## DISCUSSION

### I. THE ALJ PROPERLY DETERMINED THAT PLAINTIFF DID NOT HAVE A SEVERE MENTAL IMPAIRMENT

Plaintiff contends that the ALJ failed to apply the special technique for evaluating mental impairments set forth in 20 C.F.R. 404.1520a. The Court disagrees.

The first ALJ ruling, dated April 11, 2012, found that Plaintiff had the severe impairment of major depressive disorder. (AR 167.) This finding was based on the February 14, 2011 opinion of consulting, examining psychologist Dr. Mark Pierce, who also opined that Plaintiff was capable of performing simple, repetitive tasks and would have "only milder" difficulty working effectively with others. (AR 169, 780-788.)

On June 24, 2013, the Appeals Council ("AC") found error in the ALJ's finding of a severe impairment of major depressive disorder, based on Dr. Pierce's opinion. (AR 174-175.) The AC first observed that Plaintiff's date last insured ("DLI") was June 30, 2008 (AR 167), which means that Claimant must show that his disability began before that date. (AR 174.) Dr. Pierce examined Plaintiff but once in 2011, more than 2 years after Plaintiff's DLI. (AR 175.) Dr. Pierce did review medical records diagnosing depression in 2010, which was still more than two years after Plaintiff's DLI. (AR 175.) The AC found that "Nothing in Dr. Pierce's report suggests that he believed his findings applied to the period from November 24, 2002 [the alleged onset date], through June 30, 2008." (AR 175.) Other medical records, moreover, indicate that Claimant reported prompt improvement just one month after medication was started in 2010. (AR 175, 777.) The AC noted that the only evidence that suggests the possible presence of a mental impairment during the period at issue was in early 2007 when

Dr. James McClurg, a treating orthopedist, recommended a psychiatric consultation. (AR 175.) Dr. McClurg, however, did not make a diagnosis or record any mental status findings, and Plaintiff did not see a psychiatrist or mental health professional at the time. (AR 175.) The Claimant did not allege depression in his disability reports until 2010. (AR 175; 475-482; 495-501; 508.) The ALJ concluded that substantial evidence did not support the finding that Claimant had a medically determinable mental impairment or work-related mental limitations prior to his DLI of June 30, 2008. (AR 175.)

The AC directed the ALJ on remand as follows:

> Further evaluate the Claimant's mental impairments in accordance with the special technique described in 20 C.F.R. 404.1520a for the period at issue from November 24, 2002, the alleged disability onset date, through June 30, 2008, the date the Claimant last met the insured status requirement. The Administrative Law Judge will document application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 404.1520a(c).

(AR 176.)

In the second ALJ ruling, the ALJ began by stating that the AC's concern whether there was medical evidence supporting the presence of a psychiatric impairment on or before the June 30, 2008 DLI was well-founded. (AR 20.) The ALJ found little mention of psychiatric symptoms before that date. (AR 20.) There were reports of chronic pain in 2010, Dr. Pierce's report in 2011, and some psychiatric treatment in 2012 and 2013. (AR 20.) The ALJ, however, found that all these reports were authored more than 20 months after Plaintiff's DLI. (AR 20.) There are only isolated reports of depression in his treatment record in 2006 and 2007 and recommendations for a psychiatric evaluation. (AR 20.) Plaintiff, however, was never diagnosed with a psychiatric impairment nor is there any evidence that his symptoms persisted for more than a brief period. (AR 20.) The ALJ concluded that the record does not

demonstrate that Plaintiff had a severe medically determinable psychiatric impairment before his June 30, 2008 DLI.  (AR 20.)

Plaintiff contends that the ALJ failed to follow the special technique for evaluating mental impairments in 20 C.F.R. 404.1520a.  More specifically, Plaintiff argues that the ALJ failed to document the technique with findings regarding the severity of functional limitations set forth in 20 C.F.R. 404.1520a(c)(1), (2), (3) and (4), as instructed by the AC.  (AR 176.)  Plaintiff, however, disregards § 1520a(b) which provides as follows:

> (b) <u>Use of the technique</u>.
>
> (1)  Under the special technique, we must <u>first</u> evaluate your pertinent symptoms, signs and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . <u>If</u> we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s) . . .
>
> (2)  We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section . . .

(Emphasis added.)

The ALJ determined at step two of the sequential process that there was no evidence of a severe medically determinable psychiatric impairment prior to Plaintiff's June 30, 2008 DLI.  (AR 20.)  There was no diagnosis, no medical opinions, no mental status examination findings, and no RFC limitations for mental impairments assessed by any physician.  Because Plaintiff failed to prove a severe medically determinable impairment, the ALJ plainly was not required to rate the severity of an impairment found not to exist.  The ALJ undertook the evaluation required by § 1520a(b)(1), found no impairment and was not required to proceed to 1520a(c) by the terms of the regulation.  In <u>Keyser v. Comm'r of Soc. Sec. Adm.</u>, 648 F.3d 721, 726 (9th Cir. 2011), the 9th Circuit held that a failure to comply with the special technique is not harmless if a claimant has a colorable claim of mental impairment.  In that case, there were medical

opinions diagnosing mental impairments and addressing the degree of severity of functional limitations that would require compliance with 1520a(c). Here, by contrast, no such medical evidence exists in this case of a mental impairment prior to the Plaintiff's June 30, 2008 DLI. Plaintiff does not specify any medical evidence the ALJ failed to address. Indeed, the only mention of mental impairments in Plaintiff's own summary of the medical evidence is Dr. Pierce's 2011 opinion. (JS 2-13.) There was no mental impairment under 1520a(b)(1) through the June 30, 2008 DLI and no need to proceed to 1520a(c). There was no error.

## II. THE ALJ PROPERLY CONSIDERED THE MEDICAL EVIDENCE

Plaintiff contends that the ALJ did not fairly assess the medical evidence regarding his physical impairments and limitations. The Court disagrees.

### A. Relevant Federal Law

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, reasonably attributable to the medical condition. Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is

not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.    Analysis**

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physicians in Plaintiff's workers' compensation proceeding, Dr. James McClurg and Dr. Ralph Steiger. The Court disagrees.

The ALJ began by summarizing the objective medical evidence, which was mixed and inconsistent. (AR 21-22.) In regard to Plaintiff's cervical spine, there was a diagnosis of radiculopathy and one imaging study that revealed stenosis, but three separate electrodiagnostic tests demonstrated no signs of cervical radiculopathy. (AR 21.) Similarly,

Plaintiff was diagnosed with bilateral cubital and carpal tunnel syndromes, for which surgery was performed, but a 2007 electrodiagnostic study revealed no upper extremity neurological abnormalities whatsoever. (AR 21-22.) The ALJ found that any pain or limitations from upper extremity impairments did not meet the 12 month duration required for disability. (AR 22.) Plaintiff did undergo surgery for left shoulder impingement but a subsequent electrodiagnostic study revealed that any neuropathy had resolved. (AR 22.) Claimant even demonstrated a full range of motion in his shoulders without evidence of neurological deficits during a December 18, 2008 post-DLI examination. (AR 23.)

Notwithstanding the inconsistent medical evidence, Dr. McClurg and Dr. Steiger found Plaintiff "temporarily totally disabled" and limited to sedentary work. (AR 23.) The ALJ did not afford these opinions substantial weight because these physicians lack the vocational training and expertise required to assess the availability of work available in the national economy and the level of exertion necessary to perform work. (AR 23.) The ALJ observed that the assessments of these physicians occurred in the context of workers' compensation proceeding. (AR 23.) The terms of art used in California workers' compensation proceedings are not equivalent to Social Security disability terminology. Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002). In particular, under state law a claimant is disabled if unable to perform his or her prior work whereas a claimant for Social Security benefits is not disabled if he or she can do alternate work in the national economy, which obviously is a higher burden. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984); Silva v. Colvin, 2013 WL 6859263, at *5 (C.D. Cal. Dec. 30, 2013). Nonetheless, the ALJ may not ignore a workers' compensation physician's findings. Booth, 181 F. Supp. 2d at 1105; Coria, 750 F.2d at 247-48.

The ALJ also found the opinions of Dr. McClurg and Dr. Steiger controverted by the opinions of other physicians. The contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). In the workers' compensation proceeding, the parties retained an Agreed

Medical Examiner ("AME"), Dr. Byron King. (AR 23.) Dr. King initially reserved judgment about Plaintiff's physical impairments and limitations until receipt of a report of the examination of spine specialist Dr. Kambiz Hannani. (AR 23.) On December 18, 2008, Dr. Hannani found that there was "no clear compression of his nerves" and, "[g]iven the lack of clear radiculopathy and clear root involvement, I would recommend continued conservative care and avoidance of surgical intervention." (AR 23, 853.) Dr. King, the AME, then opined that Claimant was precluded only from a range of heavy work, "congruent with light exertion in the Social Security disability setting." (AR 23-24, 830-831.) Dr. Steiger, Plaintiff's treating orthopedist, <u>agreed</u> with the AME's assessment. (AR 23, 868.) The ALJ also noted that Dr. King's assessment was consistent with the testimony of testifying expert Dr. Bryce Breitenstein that Plaintiff can perform light work.

Plaintiff disputes the ALJ's evaluation of the medical evidence, but it is the ALJ's responsibility to resolve conflicts in the medical evidence. <u>Andrews</u>, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discounted the opinions of Dr. McClurg and Dr. Steiger for specific legitimate reasons supported by substantial evidence.[2]

### III. THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOM ALLEGATIONS

Plaintiff contends that the ALJ improperly discounted his subjective symptom allegations. The Court disagrees.

#### A. Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. <u>Bunnell v. Sullivan</u>, 947 F.2d 341,

---

[2] Plaintiff agreed in the Joint Statement that Issues 3 and 4 should be included in Issue 2. (JS 34-36.) Plaintiff's reference to Dr. Bathgate's opinion that he was temporarily totally disabled following his surgery on October 2002 for one month is not of consequence because it does not meet the 12 month durational requirement for disability.

12

346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

**B.    Analysis**

In determining Plaintiff's RFC, the ALJ did not afford full weight to Plaintiff's subjective symptom allegations. (AR 24.) Because the ALJ did not make any finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's credibility. Smolen, 80 F.3d at 1283-84, Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008). The ALJ did so.

First, the ALJ found that Plaintiff's subjective symptom allegations were inconsistent with the objective medical evidence. (AR 21, 24.) An ALJ is permitted to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). As previously summarized, the ALJ reasonably concluded that "there is a lack of medical evidence indicating that the claimant's impairments are as disabling as he claims." (AR 24.) He further concluded, "There simply is not enough medical evidence to make his allegations readily believable on or before his date last insured." (AR 24.) Plaintiff, in his

portion of the Joint Stipulation, did not address the ALJ's finding that the Plaintiff's subjective symptom allegations were inconsistent with the objective medical evidence.

Second, Plaintiff's pain was mostly managed with conservative treatment in evaluating credibility. Tommasetti, 533 F.3d at 1039. Here, the ALJ cited the assessment of spine specialist Dr. Hananni who, because of a lack of clear evidence of nerve root compression, radiculopathy and/or nerve root involvement, concluded, "I would recommend continued conservative care and avoidance of surgical intervention." (AR 21, 853.) As Plaintiff conceded in his portion of the Joint Stipulation (13:8-9), Plaintiff saw Dr. Steiger five more times with conservative care rendered. Plaintiff does not address whether the care he received for his cervical spine pain was conservative.

Third, the ALJ also found that Plaintiff's inconsistent statements and actions also undermined his credibility. (AR 24.) An ALJ may consider inconsistencies between a claimant's statements regarding his subjective symptoms and his other statements and conduct an evaluating credibility. Light v Soc. Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997). Here, the ALJ relied on the fact that the Plaintiff claimed he could not take pain medication due to liver damage despite an absence of liver damage and despite taking Norco and other narcotic pain medications. (AR 24.) The ALJ also noted that there was nearly a nine month gap in treatment after he settled his workers' compensation claim based on his orthopedic impairments, after which he changed his rationale for disability to chronic pain disorder. (AR 24.) Also, despite allegations of chronic pain, the ALJ noted that treatment records indicated no pain. (AR 24.)

Plaintiff disputes the ALJ's evaluation of the evidence, but it is the ALJ's responsibility to resolve ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record evidence is reasonable as it is here, it should not be second-guessed. Rollins, 261 F.3d at 857.

The ALJ discounted Plaintiff's subjective symptom testimony for clear and convincing reasons supported by substantial evidence.

\* \* \*

The ALJ's RFC is support by substantial evidence. The ALJ's nondisability determination is supported by substantial evidence free of legal error.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this case with prejudice.

DATED: March 2, 2018

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE